**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW MEXICO**

NATIONAL SHOOTING SPORTS FOUNDATION, INC. et al.,

Plaintiffs,

v.

RAÚL TORREZ, in his official capacity as Attorney General of New Mexico,

Defendant.

Civil Action No. 1:26-cv-3514

October 22, 2026

# PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION[1]

[1] Pursuant to D.N.M.LR-Civ. 7.1(a), the Plaintiffs sought the position of Defendant Raúl Torrez, by way of New Mexico Solicitor General Aletheia Allen. Ms. Allen stated that, "[b]ecause NMDOJ is not yet entered in the case, we do not intend to take a position on any motions at this time." Given the nature of this motion, opposition is presumed. The Plaintiffs will be serving the Defendant with formal process and all filings to date (including this motion) within the next one to two business days.

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

BACKGROUND ..... 3

ARGUMENT ..... 5

I. Plaintiffs' Challenge To HB129 Is Likely, If Not Certain, To Succeed On The Merits. ..... 5

II. HB129 Occasions A Slew Of Irreparable Harms. ..... 10

III. The Equities and Public Interest Underscore The Need For Emergency Relief. ..... 12

CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Cases**

*Awad v. Ziriax*,
670 F.3d 1111 (10th Cir. 2012) .......... 13

*Baird v. Bonta*,
81 F.4th 1036 (9th Cir. 2023) .......... 10

*Book People, Inc. v. Wong*,
91 F.4th 318 (5th Cir. 2024) .......... 13

*Brown v. Yost*,
133 F.4th 725 (6th Cir. 2025) .......... 13

*Chamber of Com. v. Edmondson*,
594 F.3d 742 (10th Cir. 2010) .......... 11

*Colo. Mont. Wyo. State Area Conf. of NAACP v. Smith*,
180 F.4th 1266 (10th Cir. 2026) .......... 12

*Def. Distributed v. Dep't of State*,
838 F.3d 451 (5th Cir. 2016) .......... 10

*District of Columbia v. Heller*,
554 U.S. 570 (2008) .......... 5, 8

*Ezell v. City of Chicago*,
651 F.3d 684 (7th Cir. 2011) .......... 10, 11

*Flood v. ClearOne Commc'ns, Inc.*,
618 F.3d 1110 (10th Cir. 2010) .......... 5

*Free the Nipple v. City of Fort Collins*,
916 F.3d 792 (10th Cir. 2019) .......... 10

*Gazzola v. Hochul*,
88 F.4th 186 (2d Cir. 2023) .......... 11

*Legend Night Club v. Miller*,
637 F.3d 291 (4th Cir. 2011) .......... 13

*Maryland Shall Issue, Inc. v. Hogan*,
971 F.3d 199 (4th Cir. 2020) .......... 11

*McDonald v. Chicago*,
561 U.S. 742 (2010) .......... 5, 7

*N.Y. State Rifle & Pistol Corp. v. Bruen*,
597 U.S. 1 (2022) ........ *passim*

*Nat'l Ass'n for Gun Rts. v. Polis*,
173 F.4th 1317 (10th Cir. 2026) ........ 12

*Nken v. Holder*,
556 U.S. 418 (2009) ........ 12

*Ortega v. Grisham*,
148 F.4th 1134 (10th Cir. 2025) ........ *passim*

*Ortega v. Grisham*,
162 F.4th 1056 (10th Cir. 2025) ........ 1

*Otto v. City of Boca Raton*,
981 F.3d 854 (11th Cir. 2020) ........ 13

*Planned Parenthood of Kan. v. Andersen*,
882 F.3d 1205 (10th Cir. 2018) ........ 5

*Schrader v. D.A. of York Cnty.*,
74 F.4th 120 (3d Cir. 2023) ........ 13

*SFFA v. President & Fellows of Harvard Coll.*,
600 U.S. 181 (2023) ........ 12

*Teixeira v. Cnty. of Alameda*,
873 F.3d 670 (9th Cir. 2017) ........ 11

*United States v. Daniels*,
101 F.4th 770 (10th Cir. 2024) ........ 9, 10

*United States v. Hemani*,
608 U.S. 772 (2026) ........ 5, 6, 8

*United States v. Quattrone*,
402 F.3d 304 (2d Cir. 2005) ........ 6

*United States v. Rahimi*,
602 U.S. 680 (2024) ........ 8

*United States v. Rose*,
180 F.4th 930 (7th Cir. 2026) ........ 9

*Wolford v. Lopez*,
609 U.S. 185 (2026) ........ 7, 8, 9, 10

*Wrenn v. District of Columbia*,
864 F.3d 650 (D.C. Cir. 2017)........................................................................ 10

**Constitutional Provision**

U.S. Const. amend. II........................................................................................ 6

**Statutes**

18 U.S.C. §922(t)(1) ........................................................................................ 3

42 U.S.C. §1983................................................................................................. 3

N.M. Stat. §30-7-7.3(A)..................................................................................... 3

N.M. Stat. §30-7-7.3(D)..................................................................................... 3

N.M. Stat. §30-7-7.3(G)..................................................................................... 3

N.M. Stat. §30-7-7.3(H)(1) ................................................................................ 3

N.M. Stat. §30-7-7.3(H)(2) ................................................................................ 3

N.M. Stat. §30-7-7.3(H)(3) ................................................................................ 3

N.M. Stat. §30-7-7.3(H)(4) ................................................................................ 3

N.M. Stat. §30-7-7.3(H)(5) ................................................................................ 3

**Other Authorities**

Patrick Lohmann, *Federal Judge Rules Against New Mexico's 7-day Waiting Period for Gun Purchases*, SourceNM (Aug. 28, 2026), https://perma.cc/7U44-5SP9................. 2

*Ortega v. Grisham*, No. 1:24-cv-00471
(D.N.M. Aug. 26, 2026), Dkt.126.............................................................. 1, 2, 4, 7

*Ortega v. Grisham,* No. 1:24-cv-00471
(D.N.M. Feb. 9, 2026), Dkt.97........................................................................... 4

*Ortega v. Grisham,* No. 1:24-cv-00471
(D.N.M. June 1, 2026), Dkt.120 ........................................................................ 1

U.S. Dep't of Just., *NICS 2025 Operational Report*, https://perma.cc/TE2V-7Q7T...................... 3

The National Shooting Sports Foundation, Inc. ("NSSF"), National Rifle Association of America ("NRA"), Second Amendment Foundation ("SAF"), New Mexico Firearms Industry Association ("NMFIA"), New Mexico Shooting Sports Association ("NMSSA"), Calibers Shooting Sports Center, Omni Tactical USA, Right to Bear Arms, and Peter Hackett (collectively, "Plaintiffs") hereby move for a preliminary injunction against Raúl Torrez, in his official capacity as Attorney General of New Mexico, enjoining him and those subject to his supervision from enforcing House Bill 129 (2024) against Plaintiffs, Plaintiffs' customers, and Plaintiffs' members.

## INTRODUCTION

Plaintiffs regret that they have been forced to seek injunctive relief, but the state's actions have left them no choice. In 2024, New Mexico enacted House Bill 129 ("HB129"), which requires prospective firearm purchasers who have already passed the comprehensive background check required by federal law to wait out an additional, weeklong "cooling off" period before taking possession of a firearm. In 2025, the Tenth Circuit published a precedential opinion "holding that [HB129] is unconstitutional," "both facial[ly] and as-applied," "except as to … those whose background checks are not cleared within three days." *Ortega v. Grisham*, 148 F.4th 1134, 1155-56 & n.16 (10th Cir. 2025); *see also* 162 F.4th 1056 (10th Cir. 2025) (per curiam) (denying New Mexico's en banc petition). And just a few months ago on remand from the Tenth Circuit, the district court in *Ortega* "grant[ed]," without reservation, the *Ortega* plaintiffs' summary-judgment motion, *Ortega v. Grisham*, No. 1:24-cv-00471 (D.N.M. Aug. 26, 2026), Dkt.126 at 3, which sought a judgment "declaring that HB129 is unconstitutional as applied to individuals who pass the background check required under federal law," *Ortega*.D.Ct.Dkt.120 at 7.

That should have been the end of any contention by New Mexico that it can continue enforcing HB129. When the U.S. Court of Appeals in which a state sits deems a state law "obviously unconstitutional," *Ortega*, 148 F.4th at 1155 n.16; *see also id.* at 1155 n.15

(characterizing the constitutional violation as "broad and clear"), and a U.S. District Court enters final judgment memorializing the Court of Appeals' "holding that [the law] is unconstitutional," *id.* at 1156; *see Ortega*.D.Ct.Dkt.126 at 2-3, state officials ordinarily follow their oaths to uphold the Constitution and stop enforcing it.

New Mexico has chosen a different path. Because the only plaintiffs in the *Ortega* case were two individuals, New Mexico has taken the position that it will continue enforcing HB129 against everyone else in the state. *See, e.g.*, Patrick Lohmann, *Federal Judge Rules Against New Mexico's 7-day Waiting Period for Gun Purchases*, SourceNM (Aug. 28, 2026), https://perma.cc/7U44-5SP9 ("[T]he order only states that the two named plaintiffs are able to purchase firearms without having to go through the waiting period. The law remains in effect otherwise." (quoting state official)). Both in public and in private, state officials have said in no uncertain terms that buyers and sellers who fail to comply with New Mexico's unconstitutional law should be prepared to face criminal charges in state court.

Because New Mexico has made clear that it will not abide the Tenth Circuit's unequivocal holding as to anyone other than the *Ortega* plaintiffs unless and until a court orders it to do so, Plaintiffs are forced to seek an order that (once again) declares HB129 unconstitutional in the context of firearms sales to individuals who pass the background check required under federal law and that permanently enjoins New Mexico from enforcing the law against that universe of persons. In the meantime, a preliminary injunction is plainly warranted. After all, the Tenth Circuit has already held that the claim Plaintiffs are bringing is not just likely to succeed, but *will* succeed. And New Mexico's insistence on continuing to enforce HB129 nevertheless is causing devastating, irreparable harm to Plaintiffs, their customers, and their members. This Court should grant a preliminary injunction forthwith.

## BACKGROUND

HB129 requires "[a] waiting period of seven calendar days … for the sale of a firearm and the transfer of the firearm to the buyer." N.M. Stat. §30-7-7.3(A).[2] Although the statute's primary stated purpose is "reduc[ing] impulsive gun violence or suicides," *Ortega*, 148 F.4th at 1140, the seven-day period is not keyed to the time it takes to complete a background check into someone's criminal and mental health history; instead, it is an unadorned "cooling-off" measure. HB129 specifies that "[t]he seven-calendar-day waiting period shall include the period required to conduct a federal instant background check." N.M. Stat. §30-7-7.3(A). So even if the background check is resolved within minutes (as most are, *see* U.S. Dep't of Just., *NICS 2025 Operational Report* 6, https://perma.cc/TE2V-7Q7T), the purchaser must still wait seven days. HB129 also purports to supersede the maximum-three-business-day delay allowed under federal law, *see* 18 U.S.C. §922(t)(1)(B)(ii), prescribing that "if the seven-calendar-day waiting period has expired without the completion of a required federal instant background check, the seller shall not transfer the firearm to the buyer until the federal instant background check is completed" or until "twenty days" have gone by. N.M. Stat. §30-7-7.3(A). Violating HB129 is a crime for both the buyer and the seller. *See id.* §30-7-7.3(D), (G).

Two law-abiding New Mexicans reacted to this infringement on their rights by promptly filing a lawsuit under 42 U.S.C. §1983. *See Ortega*, 148 F.4th at 1140. And in August 2025, the Tenth Circuit published a precedential opinion "holding that [HB129] is unconstitutional." *Id.* at 1156. Indeed, the Tenth Circuit declared HB129 "obviously unconstitutional" as applied to all who pass the background check required by federal law. *Id.* at 1155 n.16. It then "remand[ed] to

[2] Sales to buyers with a federal firearms license or a valid New Mexico concealed handgun license are exempted, as are sales to law-enforcement agencies, sales between law-enforcement officers, and sales between immediate family members. N.M. Stat. §30-7-7.3(H)(1)-(5).

the district court, with instructions to enter" injunctive relief consistent with its opinion. *Id.* at 1156.

Rather than accept the Tenth Circuit's opinion, New Mexico chose defiance. On remand, the state moved for summary judgment *in its favor*—without introducing any new evidence or even making any new arguments. The state simply asserted that the Tenth Circuit's decision is wrong, so Judge Browning should decline "to follow" it. *Ortega*.D.Ct.Dkt.113 at 2. That predictably went nowhere. Judge Browning recognized that "the Tenth Circuit has determined [the Act] to be unconstitutional as it pertains to individuals who have passed a background check," *Ortega*.D.Ct.Dkt.97 at 1, and accordingly entered final judgment in the plaintiffs' favor, *Ortega*.D.Ct.Dkt.126 at 3.

Hoping to avoid further litigation, undersigned counsel, who also represent the plaintiffs in *Ortega*, reached out to the state's counsel of record in that case to inquire whether New Mexico would be willing to agree that it will no longer enforce HB129. In response, the state's counsel informed undersigned counsel that it is New Mexico's position that it can and will enforce HB129 against everyone except Samuel Ortega and Rebecca Scott, the two plaintiffs in *Ortega*. Counsel informed the state that, if it took that position, then other parties would have no choice but to bring a new lawsuit seeking broader relief. The state nevertheless would not budge. Accordingly, Plaintiffs—leading Second Amendment advocacy organizations, multiple federally licensed firearms dealers in New Mexico, and a former law enforcement officer with concrete plans to purchase a firearm in the coming days, *see* Declaration of Peter Hackett ¶¶5, 8-9 (Oct. 18, 2026) (attached as Exhibit A)—were left with no choice but to bring this lawsuit seeking relief on behalf of themselves and their members, and seeking an injunction to prevent the state once and for all from continuing to enforce its unconstitutional law.

## ARGUMENT

Plaintiffs seeking a preliminary injunction must show "(1) a substantial likelihood that [they] will ultimately succeed on the merits of its suit; (2) [they are] likely to be irreparably injured without an injunction; (3) this threatened harm outweighs the harm a preliminary injunction may pose to the opposing party; and, (4) the injunction, if issued, will not adversely affect the public interest." *Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010). Here, every factor overwhelmingly supports preliminarily enjoining the challenged portions of HB129. Indeed, the Tenth Circuit has already held as much.

### I. Plaintiffs' Challenge To HB129 Is Likely, If Not Certain, To Succeed On The Merits.

Likelihood of success on the merits is "the first and most important preliminary-injunction factor." *Planned Parenthood of Kan. v. Andersen*, 882 F.3d 1205, 1229 (10th Cir. 2018). Here, Plaintiffs are not merely likely to succeed on the merits; the Tenth Circuit has already held that their claim is meritorious. *See Ortega*, 148 F.4th at 1155-56. There thus is no room for this Court to reach a contrary conclusion. Even if there were, the Tenth Circuit's decision is plainly correct.

**A.** "The Second Amendment protects the right of 'all Americans' to keep and bear firearms for self-defense." *United States v. Hemani*, 608 U.S. 772, 779 (2026) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008)); *see* U.S. Const. amend. II (securing "the right of the people to keep and bear Arms"); *see also McDonald v. Chicago*, 561 U.S. 742 (2010) (holding that the Second Amendment is incorporated against the states). Because "the Second Amendment was designed to codify a 'pre-existing' individual right and guard against its later erosion by majoritarian legislation or judicial fiat," a state must justify any law that regulates conduct covered by the plain text by demonstrating that its law is "consistent with th[e] Nation's historical tradition of firearm regulation." *Hemani*, 608 U.S. at 780 (quoting *N.Y. State Rifle & Pistol Corp. v. Bruen*, 597 U.S. 1, 24-25 (2022)). To do so, a state must show that the challenged restriction is "relevantly

similar" "in purpose and operation" to "'well-established'" historical analogues (the so-called "why" and "how" inquiries). *Id.* (quoting *Bruen*, 597 U.S. at 28-30).

Under that rubric, the initial question is whether "the Second Amendment's plain text covers an individual's conduct" that the challenged law restricts. *Bruen*, 597 U.S. at 24. The answer here is yes. The text of the Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. As the Tenth Circuit correctly concluded, HB129 plainly restricts conduct covered by the Second Amendment's plain text, because it prevents nearly everyone in the state ("the people") from taking possession of (and thus "keep[ing] and bear[ing]") a firearm ("Arms") for at least a week, even if they pass a background check instantly. *Ortega*, 148 F.4th at 1143-45; *see* U.S. Const. amend. II.

New Mexico has previously argued (and likely will argue again) that, because HB129 imposes only a temporary burden on the acquisition of firearms, it does not restrict conduct covered by the Second Amendment's plain text. That argument is squarely foreclosed by the Tenth Circuit's holding. *See Ortega*, 148 F.4th at 1143-45. It is also intrinsically flawed. One need only look to other fundamental rights to confirm as much. A mandatory three-day delay on offering a political stump speech (to prevent a candidate from engaging in "impulsive" rhetoric) would obviously implicate the First Amendment even though it would only "delay," not permanently "take away," anyone's right to speak. *See United States v. Quattrone*, 402 F.3d 304, 309-10 (2d Cir. 2005) ("A prior restraint is not constitutionally inoffensive merely because it is temporary."). "The Second Amendment is no different." *Ortega*, 148 F.4th at 1145. "The constitutional right to bear arms … is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Bruen*, 597 U.S. at 70 (quoting *McDonald*, 561 U.S. at 780).

Indeed, New Mexico's efforts to evade historical scrutiny have only gotten worse with age. The state argued in *Ortega* that no historical scrutiny of HB129 is necessary because "the plain text of the Second Amendment" does not explicitly mention "acquiring or purchasing firearms" (or, even more parsimoniously, "the immediate acquisition of commercially sold firearms"). *Ortega*.D.Ct.Dkt.109 at 15 (emphasis omitted). The Tenth Circuit squarely rejected that argument as inconsistent with *Bruen*. *See Ortega*, 148 F.4th at 1144-45 (holding that a law that "prevents a citizen from possessing a firearm for a flat period" "is an infringement on the right to bear arms" and "must be scrutinized as one"). And the Supreme Court has since confirmed that the state is wrong. In *Wolford v. Lopez*, Hawaii argued that its law did not restrict conduct covered by the plain text because the Second Amendment does not explicitly address "the right to armed entry onto private property without the owner's consent." 609 U.S. 185, 204 (2026). The Court rejected that argument out of hand, holding that a law that "burdens those wishing to exercise their Second Amendment right" "fall[s] within the plain text of the Second Amendment" no matter how the law imposes that burden. *Id.* at 201-02. It thus made no difference that Hawaii's law operated by requiring property owners to provide consent. By making it illegal for people to carry ("bear") a firearm as they go about their daily lives unless they secure advance consent from all private property owners, the law plainly "impose[d] a new burden on permit holders" to bear arms. *Id.* at 202. Here, too, it makes no difference that the Second Amendment does not explicitly mention the acquisition of firearms or speak to how long states may make people wait to exercise the right to keep and bear arms—as, again, the Tenth Circuit squarely held in *Ortega*, 148 F.4th at 1144-45.

**B.** Nor can New Mexico evade historical scrutiny by (mis)conceptualizing HB129 as a mere "condition" on the acquisition of arms. The Tenth Circuit has already rejected that argument, holding that HB129 "does not impose a condition or qualification like other restrictions considered

presumptively constitutional." *Ortega*, 148 F.4th at 1147. That holding is binding on this Court—and is also entirely correct. While the Supreme Court may have described "conditions and qualifications on the commercial sale" of firearms as "presumptively lawful," *Heller*, 554 U.S. at 626-27 & n.26, it has never embraced the proposition that laws regulating firearms transactions need not be consistent with our Nation's historical tradition of firearms regulation. Nor would that make any sense when restricting whether and when people may acquire firearms provides an obvious way of restricting the exercise of the right. What matters is whether a law "burdens those wishing to exercise their Second Amendment right." *Wolford*, 609 U.S. at 202. And HB129 does nothing *other* than burden those wishing to exercise their Second Amendment right. In all events, the Tenth Circuit correctly held that even if HB129 *were* considered a condition of commercial sale, any presumption of constitutionality would be rebutted because a law like HB129 that is "justified only by assuming that citizens cannot be trusted with their own rights[] is put toward an abusive end." *Ortega*, 148 F.4th at 1148-49 & n.7; *see also Bruen*, 597 U.S. at 38 n.9.

New Mexico cannot credibly argue otherwise. Unlike laws prohibiting sales to minors or prohibiting possession by felons, New Mexico's cooling-off law does not target *either* people found to pose a threat based on individualized conduct *or* a subset of people who as a class are thought particularly likely to act violently or impulsively. *Cf. Hemani*, 608 U.S. at 792 (finding inconsistent with historical tradition a restriction on possession that does not "confine[] its reach to those who are categorically and unusually dangerous"). HB129 instead "broadly restrict[s] arms use by the public generally," *United States v. Rahimi*, 602 U.S. 680, 698 (2024), based on the view that everyone who wants to exercise their Second Amendment rights should be treated with suspicion. "To say that a desire to purchase a firearm renders one dangerous or presumptively not law-abiding for a time would also penalize someone for exercising a constitutional right, which is

obviously unconstitutional." *Ortega*, 148 F.4th at 1150 n.10. If the state wants to disarm an individual or category of individuals, even if only for a "limit[ed]" "time," then it must establish that the person or category poses a "current danger to others." *United States v. Rose*, 180 F.4th 930, 932 (7th Cir. 2026); *see also United States v. Daniels*, 101 F.4th 770, 778 (10th Cir. 2024) ("[I]f we are to take seriously the normative thrust of the Supreme Court's recent decision[s] …, then we cannot look with suspicion on citizens presumably exercising their Second Amendment rights in a lawful way."). HB129 makes no effort to do either of those things.

**C.** Because HB129 "burdens those wishing to exercise their Second Amendment right," *Wolford*, 609 U.S. at 202, the onus is on the state to "prove that its firearms regulation is part of the historical tradition that delimits … the right to keep and bear arms." *Bruen*, 597 U.S. at 19. But as the Tenth Circuit made clear beyond cavil, the state cannot meet that burden because HB129 is inconsistent with the Nation's "historical tradition of firearm regulation." *Ortega*, 148 F.4th at 1149-55. Indeed, the historical record is so lopsided that Plaintiffs would prevail even if *they* bore the burden of proving that such laws are *not* consistent with historical tradition. There is no longstanding tradition in this country of forcing law-abiding citizens to wait to acquire firearms even after they have passed a background check proving their bona fides.

To be sure, some historical laws sought to prevent firearm possession by certain classes of individuals—e.g., people who were intoxicated (for obvious reasons), people subject to individualized determinations of dangerousness (also for obvious reasons), and disfavored minorities (for obviously odious reasons). But none of those laws imposed anything remotely akin to the sort of population-wide burden on keeping and bearing arms that HB129 foists on all New Mexicans. Likewise, while some states adopted waiting-period laws in the early- and mid-twentieth century, those laws were imposed to facilitate background checks or other investigatory

efforts to determine whether someone is prohibited from possessing a firearm. Unadorned cooling-off laws such as HB129, by contrast, are not tethered to any such efforts; they simply delay the exercise of Second Amendment rights for the sake of delay, on the theory that even law-abiding citizens who have passed a background check cannot be trusted with a firearm. So even assuming twentieth-century waiting-period laws were appropriate historical analogues, cooling-off laws—which are for the most part a twenty-first-century innovation—reflect a fundamentally different "how" and "why," and are animated by reasoning that is fundamentally incompatible with the Second Amendment. *Wolford*, 609 U.S. at 196-97; *see also Daniels*, 101 F.4th at 778. Because HB129 is not "consistent with the Nation's historical tradition of firearm regulation," *Bruen*, 597 U.S. at 24, it violates the Second Amendment, as the Tenth Circuit has already held, *Ortega*, 148 F.4th at 1155.

**II. HB129 Occasions A Slew Of Irreparable Harms.**

As the attached declarations make clear, HB129 is inflicting all manner of irreparable harm on all manner of New Mexico residents and businesses. The harm is perhaps most stark for Plaintiff Hackett and the remaining Plaintiffs' customers and individual members—law-abiding New Mexico citizens who face an indefinite deprivation of their Second Amendment rights. *See* Hackett.Decl.¶8-10. As the Tenth Circuit has conclusively held, when it comes to the deprivation of the Second Amendment right occasioned by HB129, courts should "presume that the injury will be irreparable." *Ortega*, 148 F.4th at 1142; *see id*. (observing that a constitutional violation "collapses the first and second preliminary-injunction factors, equating likelihood of success on the merits with a demonstration of irreparable injury" (citing *Free the Nipple v. City of Fort Collins*, 916 F.3d 792 (10th Cir. 2019))). Other courts readily agree. *See Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023); *Wrenn v. District of Columbia*, 864 F.3d 650, 667-68 (D.C. Cir. 2017); *Def. Distributed v. Dep't of State*, 838 F.3d 451, 457 (5th Cir. 2016); *Ezell v. City of Chicago*, 651 F.3d

684, 699 (7th Cir. 2011). Courts are likewise in agreement that federally licensed firearms dealers (i.e., vendors of firearms) like Plaintiffs Calibers, Omni Tactical, and Right to Bear Arms have "standing to pursue Second Amendment claims on behalf of their customer base." *Gazzola v. Hochul*, 88 F.4th 186, 195 (2d Cir. 2023); *see also Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 216 (4th Cir. 2020); *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017) (en banc); *Ezell*, 651 F.3d at 696.

The irreparable harm is no less obvious for Plaintiffs Calibers, Omni Tactical, and Right to Bear Arms. These retailers' businesses are wholly reliant on their customers' willingness and ability to purchase firearms. But under HB129, their customers cannot purchase a firearm immediately, which leaves some unwilling to purchase one at all. Customers often come into Plaintiffs' and Plaintiffs' retailer members looking to purchase a firearm, but leave without doing so because of the seven-day wait period imposed by HB129. *See* Declaration of Ryan S. Burt ¶5 (attached as Exhibit B); Declaration of Jacob Melidones (Omni Tactical) ¶5 (Oct. 19, 2026) (attached as Exhibit C); Declaration of Erik Rasmussen ¶5 (Oct. 19, 2026) (attached as Exhibit D); Declaration of John T. McNamara, Jr. ¶9 (Oct. 20, 2026) (attached as Exhibit E). Because sovereign immunity makes it impossible for these vendors to recover damages, that loss in business opportunity constitutes irreparable injury—to say nothing of the loss in customer goodwill. *See Chamber of Com. v. Edmondson*, 594 F.3d 742, 770-71 (10th Cir. 2010) ("Imposition of monetary damages that cannot later be recovered for reasons such as sovereign immunity constitutes irreparable injury.").

The same goes for NSSF's, NRA's, SAF's, NMFIA's, and NMSSA's other manufacturer and retailer members, whose businesses are similarly threatened. *See* McNamara.Decl.¶¶6-9; Declaration of John Commerford ¶¶5, 7-10, 12 (October 21, 2026) (attached as Exhibit F);

Declaration of William Sack ¶¶3, 6-9 (October 20, 2026) (attached as Exhibit G); Declaration of Jacob Melidones (NMFIA) ¶¶4, 7, 9 (Oct. 19, 2026) (attached as Exhibit H). Recent 42 U.S.C. §1983 caselaw confirms that organizations like NSSF, NRA, SAF, NMFIA, and NMSSA have standing to vindicate the interests of their New Mexico-based members. *See SFFA v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023) (holding that a membership organization suing under §1983 may "assert 'standing solely as the representative of its members'"); *see also Nat'l Ass'n for Gun Rts. v. Polis*, 173 F.4th 1317, 1330-31 (10th Cir. 2026). And cases old and new confirm that a law like HB129 also injures these organizations "in [their] own right," *SFFA*, 600 U.S. at 199, by causing them to lose membership dues and requiring them to divert resources, monetary and otherwise, to help their New Mexico-based members weather HB129's storm. *See Colo. Mont. Wyo. State Area Conf. of NAACP v. Smith*, 180 F.4th 1266, 1275 (10th Cir. 2026) (holding that organizations had standing because they "diverted time, personnel, and resources from their regular programming into monitoring and combatting" the defendants' actions). For example, Plaintiff NMFIA's *raison d'être* is to support New Mexico gun store owners and Federal Firearms License dealers, and it has had to expend its limited resources to help its members deal with HB129's effects on their businesses. *See* Melidones.NMFIA.Decl.¶¶3, 8-9; *see also* McNamara.Decl.¶¶4, 9-10; Commerford.Decl.¶¶4, 13; Sack.Decl.¶¶9-11. All of those harms are irreparable, and they more than justify preliminary relief.

**III. The Equities and Public Interest Underscore The Need For Emergency Relief.**

When a state government "is the opposing party," the third and fourth injunction factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). And when the plaintiffs are challenging government action as unconstitutional, the merged equities/public-interest inquiry travels together with the merits analysis, because "it is always in the public interest to prevent the violation of a party's constitutional rights" and "the State can have 'no interest in keeping an unconstitutional

law on the books.'" *Ortega*, 148 F.4th at 1154 n.13. Numerous circuits agree. *See Brown v. Yost*, 133 F.4th 725, 737-38 (6th Cir. 2025); *Book People, Inc. v. Wong*, 91 F.4th 318, 340-41 (5th Cir. 2024); *Schrader v. D.A. of York Cnty.*, 74 F.4th 120, 128 (3d Cir. 2023); *Otto v. City of Boca Raton*, 981 F.3d 854, 870 (11th Cir. 2020); *Legend Night Club v. Miller*, 637 F.3d 291, 302-03 (4th Cir. 2011). In short, when the merits analysis weighs in favor of an injunction (as it does here, *see supra* Part I), the merged equities/public-interest factor does too. *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.").

**CONCLUSION**

The Court should enjoin Defendant from enforcing the challenged portions of HB129 against Plaintiffs and all Plaintiffs' members pending final resolution of Plaintiffs' Second Amendment claim.

PLAINTIFFS – NATIONAL SHOOTING SPORTS FOUNDATION, INC., NATIONAL RIFLE ASSOCIATION OF AMERICA, SECOND AMENDMENT FOUNDATION, NEW MEXICO FIREARMS INDUSTRY ASSOCIATION, NEW MEXICO SHOOTING SPORTS ASSOCIATION, CALIBERS SHOOTING SPORTS CENTER, OMNI TACTICAL USA, RIGHT TO BEAR ARMS, and PETER HACKETT

By /s/ Carter B. Harrison IV

Carter B. Harrison IV
**Harrison & Hart, LLC**
924 Park Ave SW, Suite E
Albuquerque, NM 87102
(505) 295-3261
carter@harrisonhartlaw.com

Michael D. McCoy*
**Mountain States Legal Foundation**
2596 South Lewis Way
Lakewood, CO 80227
(303) 292-2021
mmccoy@mslegal.org

Erin E. Murphy*
Matthew D. Rowen*
Kevin Wynosky*
Ilan J. Posner*
**Clement & Murphy, PLLC**
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com
matthew.rowen@clementmurphy.com
kevin.wynosky@clementmurphy.com
ilan.posner@clementmurphy.com

***Attorneys for Plaintiffs***

* *pro hac vice* applications forthcoming

Their Attorneys